H. C. DONALDSON CO. *v.* UNITED STATES (No. 4404)[1]

United States Court of Customs and Patent Appeals, April 5, 1943

*Lawrence A. Harper* for appellant.

*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.

[Oral argument February 3, 1943, by Mr. Weeks;

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, overruling appellant's protest.

Merchandise, consisting of coke "manufactured from culm and duff," imported into the United States from Germany October 1, 1937, was admitted free of duty by the collector at the port of Los Angeles under paragraph 1550 of the Tariff Act of 1930. However, a tax of 10 cents per 100 pounds was levied against the merchandise by the collector under the provisions of section 601 (c) (5) of the Revenue Act of 1932.

[1] C. A. D. 236.

The importer protested the collector's assessment, claiming that the involved coke was not subject to such tax for the reason that it was "manufactured from culm and duff" and was not intended by the Congress to be subject to the tax provided in that section. · An alternative claim was made in the protest; that is, that the tax should not have been assessed upon that portion of the importation which consisted of so-called fines or breeze, because it was neither coal nor coke manufactured therefrom.

Section 601 (c) (5) of the Revenue Act of 1932, so far as pertinent to the issues here, reads:

SEC. 601.   EXCISE TAXES ON CERTAIN ARTICLES.

\*        \*        \*        \*        \*        \*        \*

(c)  \* \* \*.
(5) Coal of all sizes, grades, and classifications (except culm and duff), coke manufactured therefrom; and coal or coke briquettes, 10 cents per 100 pounds. \* \* \*.

On the trial below, appellant called but one witness, E. L. Brumley, who testified that he was a partner in the appellant company; that he had been engaged as an importer of coke for approximately 13 years; that his company had imported coke from Belgium, Holland, England, and Germany; that subsequent to importation, the coke was sold to steel plants and foundries; that he also purchased coke from the coke producing districts of the United States, such as Birmingham, Pittsburgh, and Colorado; that the domestic coke was sold by him to steel plants, foundries, and the sugar industry; that all coke sold by him was sold according to specification; that the character of the coke and the use to which the coke is put is determined by the type of coal from which the coke is manufactured; that coke is produced from "culm and duff or a small grade of coal"; that the involved coke was manufactured from culm and duff which, the witness stated, is sometimes called "slack"; that culm and duff is refuse coal containing impurities; that the involved coke was produced by the Hugo Stinnes Co. at its oven located at Muelheim Ruhr, Germany; that he personally placed the order for the involved coke when he was in Europe, apparently sometime in 1936; that he did not know from what material coke was produced in other coke ovens in Europe; and that culm and duff is considered practically worthless in the United States. The witness also testified that a portion of the importation consisted of several thousand pounds of fines and breeze which, he stated, was worthless and resulted from the disintegration of pieces of coke during transportation. The latter testimony was submitted in support of the alternative claims in the protest that the fines or breeze were neither coal nor coke, and, therefore, were not subject to the tax provided in section 601, *supra*. Owing to our views regarding the principal claim raised by the protest and presented here, that is,

that imported coke manufactured from culm and duff is not subject to the tax under section 601, *supra*, we deem it unnecessary to set out the evidence regarding the issue as to the taxable status of the fines and breeze or to discuss that portion of the trial court's decision overruling the protest as to that issue.

The Government introduced no evidence.

The trial court, in an opinion by Walker, Judge, Oliver, Presiding Judge, concurring, stated that, although grammatically the provision in section 601 (c) (5), *supra*, for "coke manufactured therefrom" relates back to the preceding clause "Coal of all sizes, grades, and classifications (except culm and duff)" and from a grammatical point of view it would appear that the Congress intended to exclude from the operation of the provision in question coke manufactured from culm and duff, nevertheless, the legislative history of the provision indicated a contrary purpose; i. e., that the Congress intended that the provision "coke manufactured therefrom" should include coke manufactured from culm and duff.

The legislative history referred to by the court is as follows: As originally passed by the House of Representatives, section 601 (c) (5) read:

That an excise tax shall be levied, collected, and paid upon the hereinafter described articles when imported from any foreign country into the United States, upon coal (anthracite or bituminous), coke, or coal or coke briquettes, 10 cents per one hundred pounds.

The section was amended by the Committee on Finance of the Senate to read, so far as pertinent here, as follows:

Coal of all sizes, grades, and classifications, coke manufactured therefrom; and coal or coke briquettes, 10 cents per 100 pounds.

With reference to the quoted amendment, the committee, in its report to the Senate, stated:

The coal paragraph has been broadened to cover all sizes, grades, and classifications of coal.

The committee amendment was agreed to by the Senate. See Congressional Record, 72d. Cong. 1st Sess. Vol. 75, Part 10, page 10799. Thereafter, Senator Reed of Pennsylvania proposed to amend the provision in question by inserting the words "except culm and duff." In explanation of his proposal, the Senator stated that there was a factory in Charleston, S. C., which made briquettes "out of what is known as duff, which in this country is called 'culm,' which is brought from England or Wales." The Senator further stated that there was but one such factory in the United States; that it was impossible, because of freight rates, to use coal mined in Pennsylvania, Virginia, or West Virginia to make briquettes; that the only "source of supply available to these people *is this very cheap trash which we call 'culm'*

and which they get from 'Wales' "; and that the acceptance of his proposed amendment would not interfere with the congressional "policy with regard to coal importations." [Italics not quoted.] The proposed amendment was adopted by the Senate without debate. See Congressional Record, 72d. Cong. 1st Sess. Vol. 75, Part 10, page 11652. On page 19 of the Conference Report to accompany H. R. 10236, which became the Revenue Act of 1932, it is stated that the Senate "amendment [No. 138] makes it clear that the tax on coal shall apply to all sizes, grades, and classifications of coal, other than culm and duff."

In its opinion, the trial court, after referring to the stated legislative history, said:

It is thus clear that in adopting the amendment it was the purpose of Congress to define the scope of the tax on coal only, and that there was not any purpose to limit the scope of the tax on coke so as to exclude therefrom coke made from culm and duff coal. *From the record of debate it does not appear that that subject engaged the attention of the lawmakers.*

Support for this construction of the language used in section 601 (c) (5), supra, *is found in the record evidence, which indicates that in foreign countries coke is manufactured only from culm and duff or a small grade of coal.* As pointed out in defendant's brief—

Obviously, if coke is manufactured in foreign countries from a grade of tax-free coal—and that is what the present record indicates—the provision for a tax on imported coke would never apply. In other words, if plaintiff's contention is upheld, the Congress will have provided for a tax on a subject which does not exist.

We therefore hold plaintiff's first claim to be without merit, and pass to a consideration of the second, or alternative, claim, viz, that that portion of the importation which consisted of so-called fines or breeze, and segregated at the time of importation or thereafter, is entitled to free entry since it is neither coal nor coke manufactured therefrom. [Italics not quoted.]

The terms "culm" and "duff" are defined by the lexicographers as follows:

*culm,* n. * * * 2. *a* Refuse coal or coal dust; slack; specif., anthracite slack. *b* Hence, anthracite, esp. when in small nodules.

*duff,* n. * * * 2. Fine coal; slack. (Webster's New International Dictionary.)

*culm,* n. 1. [Pennsylvania.] Coal-refuse and -dust collected about anthracite mines or at shipping points. 2. An anthracite coal of inferior quality.

*duff,* n. * * * 4. [Rare.] Small or fine coal. (Funk & Wagnalls New Standard Dictionary.)

It will be observed that in his statement to the Senate, Senator Reed referred to "culm and duff" as "very cheap trash"; that the witness Brumley testified that the involved coke was made from culm and duff which, he stated, was *refuse coal containing impurities* which is sometimes called "slack"; and that the dictionary definitions of the terms "culm" and "duff" are consistent with the meanings ascribed to such terms by both Senator Reed and the witness Brumley; that is, that culm or duff is coal-refuse containing impurities and is an inferior quality of coal. It will also be observed from the legislative

history, hereinbefore set forth, that prior to the adoption of Senator Reed's amendment, which excepted from the operation of section 601 (c) (5), *supra*, culm and duff, the provision "Coal of all sizes, grades, and classifications" included culm and duff, and that the provision "coke produced therefrom" included coke produced from culm and duff. Accordingly, it must have been evident to Senator Reed at the time he proposed his amendment, to the Senate at the time of the adoption of such amendment, to the conferees representing the House and the Senate at the time the language in the provision in question was agreed to, and to the House of Representatives at the time it agreed to the Senate amendment, that, by excepting culm and duff from the operation of the coal provision, the clause "coke manufactured therefrom" could not, by proper construction of the provisions in question, relate to culm and duff. That is to say, it must have been evident that the clause "coke manufactured therefrom" could not relate to a type or grade of coal—culm and duff—that had been expressly excluded from the provision for "Coal of all sizes, grades, and classifications." Accordingly, it must be presumed that the Congress was aware of what it was doing, and that it did exactly what it intended to do; namely, to except culm and duff from the operation of the coal provision, and to provide for a tax on such coke as was manufactured from "Coal of all sizes, grades, and classifications," except such coke as was manufactured from culm and duff. We find nothing in the legislative history to indicate that the Congress had in mind that any other construction might be placed upon the provisions in question.

It clearly appears from the testimony of appellant's witness Brumley, and it is not questioned here by counsel for the Government, that the involved coke was manufactured from culm and duff, and that culm and duff is refuse coal or slack containing impurities.

It is true that the witness, in testifying with regard to the presence of fines and breeze in the involved importation and to the objection of the presence of such material in a shipment of coke, stated that coke was produced from "culm and duff or a small grade of coal." However, it does not follow that because culm and duff contains small coal, all small coal is culm and duff.

It is clear from the record that the witness was familiar only with the material from which coke was manufactured in the Muelheim Ruhr oven of the Hugo Stinnes Company, and that he had no knowledge, as he stated, of the material used in the manufacture of coke in other coke ovens in Europe.

We find nothing in the record to warrant a holding that all coke produced in foreign countries is manufactured from a grade of tax-free coal, and that if appellant's contention in this case is sustained "the Congress will have provided for a tax on a subject which does

not exist," as argued by counsel for the Government and as held by the trial court.

For the reasons herein stated, we are of opinion that the Congress did not intend by the provision "coke manufactured therefrom," contained in section 601 (c) (5), *supra*, to impose the tax provided in that section on coke manufactured from culm and duff, and we so hold. Accordingly, the judgment of the trial court is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.

Bland, Judge, dissents.